IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Jamar L. Lenton, Sr., | ) | C/A NO. 7:21-cv-03423-JD-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| James Bogan, Travis Copeland, Aaron Wrennall, Jonathan Payne, Matthew Turner, Unknown Deputies with the Spartanburg County Sheriff's Department, C. Baldwin, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court with the Report and Recommendation ("Report and Recommendation" or "Report") of United States Magistrate Judge Jacquelyn D. Austin, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) of the District of South Carolina.[1] (DE 49.) Plaintiff Jamar L. Lenton, Sr. ("Plaintiff" or "Lenton") filed this action against Defendants James Bogan, Travis Copeland, Aaron Wrennall, Jonathan Payne, Matthew Turner, Unknown Deputies with the Spartanburg County Sheriff's Department, and C. Baldwin ("Defendants"), alleging Defendants violated Plaintiff's Fourth Amendment rights by falsely arresting him without an arrest warrant and without probable cause and by subjecting him to excessive force. (DE 12.)

On August 22, 2022, Defendants filed a Motion for Summary Judgment under Rule 56, Fed. R. Civ. P., seeking to dismiss Plaintiff's lawsuit. (DE 38.) By Order filed August 23, 2022,

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (DE 39.) Thereafter, Plaintiff filed a Response (DE 46), and Defendants filed a Reply (DE 47). On January 18, 2023, the magistrate judge issued the Report, recommending "that the motion be GRANTED as to Defendant C. Baldwin; GRANTED as to the false arrest claim at Count I; and DENIED as to the excessive force claim at Count II" and "that 'Unknown Deputies with the Spartanburg County Sheriff's Department' be dismissed from this action without prejudice." (DE 49, pp. 24-25.) Accordingly, for the reasons stated below, the Court adopts the Report and grants Defendants' Motion for Summary Judgment, as provided herein.

## BACKGROUND

The Report and Recommendation sets forth the relevant facts and legal standards, which the Court incorporates herein without a complete recitation. However, as a brief background relating to the objections raised by Plaintiff, the Court provides this summary.

On October 31, 2019, Spartanburg County Sheriff's Office ("SCSO") Deputy Aaron Wrennall (Deputy "Wrennall") responded to an address in Spartanburg County. (DE 38-3, p. 2.) There, Deputy Wrennall was advised by Plaintiff's daughter that her child—Plaintiff's grandchild—was at another residence with Plaintiff. (Id.) Plaintiff's daughter asked Deputy Wrennall to accompany her to Plaintiff's house because "[Plaintiff] had been drinking during the night and she kn[ew] how [Plaintiff could get] when he drinks and wanted [Deputy Wrennall] to come with her to retrieve her child." (Id.)

Deputy Wrennall then went with Plaintiff's daughter to Plaintiff's home. (Id.) According to Deputy Wrennall's report, he knocked on Plaintiff's door, announced who he was, and asked him to open the door. (Id.) When Plaintiff opened the door, he began yelling at his daughter and

2

telling her to leave. (Id.) Deputy Wrennall noted that he smelled alcohol on Plaintiff. (Id.) Deputy Wrennall told Plaintiff that his daughter had a right to take her child with her. (Id.) Plaintiff told his daughter she could not take the child because the child was safer at home. (Id.) Deputy Wrennall tried to separate Plaintiff and his daughter to keep them from yelling at each other. (Id.)

Upon further escalation involving yelling, profanity, and additional backup officers, Plaintiff reemerges from the front door holding a young child, wearing only a diaper, by his underarms. (BWC 4:52–4:53.) Plaintiff's arms were outstretched as he held the baby out in front of him and yelled, "Here's the f***ing baby, just woke up, naked as f***. Take him. Take him." (BWC 4:53–4:58.) The other deputy repeatedly told Plaintiff to put the baby down, to which Plaintiff responded, "No, he want him. Take him." (BWC 4:56–4:59.) Plaintiff's daughter can then be heard screaming, "Are you serious?" (BWC 5:01–5:02.) She rushed forward and grabbed the baby. (BWC 5:03–5:07.) After she did that, multiple deputies ran up onto the porch, where they appeared to push Plaintiff toward his front door and grab him, and, as they surrounded him, he can be heard saying, "What the f*** are y'all doing? What the f*** is this?" (BWC 5:07–5:15.) The body worn camera ("BWC") recording cuts out after the group of deputies pull Plaintiff away from his front door and down into the yard. (BWC 5:15–5:19.) Defendants contend that deputies commanded Plaintiff to put the child down and advised that he was going to be arrested, at which time Plaintiff did not comply and, in fact, resisted arrest before being placed under arrest. (DE 38-3, pp. 4-5.)

Plaintiff was subsequently charged with unlawful neglect of a child or helpless person. (DE 38-3, p. 5.) On May 25, 2021, the charge was nolle prossed. Plaintiff subsequently filed this action alleging that Defendants violated his Fourth Amendment rights by falsely arresting him without an arrest warrant and without probable cause. (DE 12, ¶¶ 1–15) Plaintiff also alleges that

Defendants violated his Fourth Amendment rights by subjecting him to excessive force when among other things, Defendant Baldwin put his knee in Plaintiff's back and Defendant Payne jammed his knee into Plaintiff's shoulder causing him pain and suffering. (Id. at ¶¶ 16–22.) As his relief, Plaintiff seeks money damages, including punitive damages, as well as court costs. (Id. at ¶¶ 12, 13, 15, 22.)

## DISCUSSION

On February 1, 2023, Defendants filed an objection to the portion of the Report that recommends denying summary judgment as to Plaintiff's causes of action for excessive force. (DE 52.) However, to be actionable, objections to a report and recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir. 1984). "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (2005) (citing Thomas v. Arn, 474 U.S. 140 (1985)). "A general objection to the entirety of the magistrate judge's report is tantamount to a failure to object." Tyler v. Wates, 84 F. App'x 289, 290 (4th Cir. 2003). "Likewise, a mere restatement of the arguments raised in the summary judgment filings does not constitute an 'objection' for the purposes of district court review." Nichols v. Colvin, 100 F. Supp. 3d 487 (E.D. Va. 2015). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Upon review, the Court finds that Defendants object to the Report contending it "misapplies the *Graham* factors and that the remaining Defendants used reasonable and appropriate force in light of the circumstances presented; second, Plaintiff actively resisted arrest by refusing to comply with directives and physically engaging with officers; and, third, qualified immunity is appropriate . . . ."[2] (DE 52, p. 1.) As the Report correctly notes, "[c]laims of excessive force during an arrest or other seizure are governed by the Fourth Amendment's 'objective reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989). "Objective reasonableness" requires "balanci[ng] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the government's interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8 (1985) (internal quotation marks omitted). "[R]easonableness is determined based on the information possessed by the officer at the moment that force is employed." Waterman v. Batton, 393 F.3d 471, 477 (4th Cir. 2005). Accordingly, "force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated." Id. at 481. Nevertheless, Defendants' objection proffers theories (based on incomplete BWC) that require the Court to construe inferences and ambiguities regarding Plaintiff's use of excessive force claim against Plaintiff and in favor of Defendants, which is improper at summary judgment. See Sylvia Dev. Corp. v. Calvert Cty., 48 F.3d 810, 818 (4th Cir. 1995) ("It is the province of the jury to resolve conflicting inferences from circumstantial evidence.") Rather, the party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

---

[2] The Graham Court set forth several factors to consider when determining whether an officer's use of force is reasonable, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989).

In spite of these guideposts, Defendants contend "in addition to Plaintiff's unlawful conduct towards his grandchild, his intoxication, threatening behavior and aggressive verbal remarks towards officers and his daughter created a situation where the threat of additional offenses remained." (DE 52, p. 2.)  To that end, Defendants argue although "Plaintiff did not brandish a weapon but [Plaintiff] wore clothing that could conceal one and, after returning inside his home at multiple points, could have reemerged with a weapon or other device, concealed or otherwise, to escalate the situation in proportion and furtherance of his verbal threats and physical gestures." (Id. at 2-3.)  Conversely, the Report concludes as to the first Graham factor, "the severity of the crime at issue" and the second factor, "whether the suspect poses an immediate threat to the safety of the officers or others," that they weigh in favor of the Plaintiff.  The Report notes that Plaintiff's grandchild was not in distress, he had turned over his grandchild at the time of his arrest, and there were no indications that Plaintiff was armed.  (DE 49, p. 21.)  Since Defendants have not offered any evidence other than the BWC (which is incomplete) to support the severity of the crime after he released his grandchild or an immediate threat to the safety of the officers or others, when viewed in a light most favorable to Plaintiff, Defendants have not met their burden at summary judgment.  See Waterman v. Batton, 393 F.3d at 481 ("[F]orce justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated.").

As it relates to the final Graham factor, "whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight," the Report acknowledges the conflicting accounts.  While Defendants contend they advised Plaintiff he was going to be arrested and that Plaintiff resisted arrest, the deputies' body camera did not capture any warnings to Plaintiff, and Plaintiff's statements when the deputies attempted to arrest him demonstrated confusion.  Further, the Report

6

notes that body camera footage does not clearly show Plaintiff's resistance to the arrest because the recording cuts out at the time deputies run up to the porch to arrest Plaintiff. Given the Report's able and comprehensive analysis as it relates to the Graham factors and the genuine issues of material facts regarding the same, Defendants' objection is overruled.

Accordingly, after a thorough review of the Report and Recommendation and the record in this case, the Court adopts the Report (DE 49) and incorporates it by reference.

It is, therefore, **ORDERED** that Defendants' Motion for Summary Judgment (DE 38) is granted, in part, as to Defendant C. Baldwin and as to the false arrest claim at Count I and is denied as to the excessive force claim at Count II. Further, Defendants "Unknown Deputies with the Spartanburg County Sheriff's Department" are dismissed from this action without prejudice.

**IT IS SO ORDERED**.

_____
Joseph Dawson, III
United States District Judge

Florence, South Carolina
February 27, 2023

## NOTICE OF RIGHT TO APPEAL

Plaintiff is hereby notified that he has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.